UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

PAULA CALLEJAS TREJO, TERESA
LUGO CALLEJAS, ANTONIO LUGO
CALLEJAS, CLEMENTINA LUGO, AND
LAURENTINA LUGO, INDIVIDUALLY
and AS WRONGFUL DEATH BENEFICIARIES
OF GUILLERMO LUGO-CALLEJAS, DECEASED                PLAINTIFFS

VS.                          CIVIL ACTION NO. 3:20-CV-539-TSL-RPM

OVERNIGHT PARTS ALLIANCE, LLC,
WHOLESALE PARTS ALLIANCE, LLC,
STEVEN MCKINNEY, INDIVIDUALLY
and d/b/a OVERNIGHT PARTS ALLIANCE,
LLC, and PENSKE TRUCK LEASING CO., L.P.            DEFENDANTS


MEMORANDUM OPINION AND ORDER

   This cause is before the court on the motion of plaintiffs
Paula Callejas Trejo, Teresa Lugo Callejas, Antonio Lugo
Callejas, Clementina Lugo and Laurentina Lugo, individually, and
as the wrongful death beneficiaries of Guillermo Lugo-Callejas,
deceased, to remand, pursuant to 28 U.S.C. § 1447.  Defendants
Overnight Parts Alliance, LLC, Wholesale Parts Alliance, LLC,
Steven McKinney and Penske Truck Leasing Co., L.P., have
responded in opposition to the motion.  The court, having
considered the memoranda of authorities submitted by the
parties, concludes that the motion to remand is not well-taken
and should be denied.

1

<u>Background</u>

This wrongful death action, which plaintiffs filed in the Circuit Court of Kemper County, Mississippi, arises from a June 3, 2019 automobile accident in Kemper County in which plaintiffs' decedent, Guillermo Lugo-Callejas, along with six others, was killed when a box truck being driven by defendant Steven McKinney crossed over the center line of the highway and collided head-on with the van in which plaintiffs' decedent was a passenger.  According to the complaint, at the time of the accident, McKinney was acting in the course and scope of his employment as a delivery driver for defendants Overnight Parts Alliance (OPA) and Wholesale Parts Alliance (WPA), and driving a vehicle leased to OPA and/or WPA by defendant Penske Truck Leasing, LLC (Penske).  Plaintiffs allege that each of the defendants was negligent in one or more particulars and that their negligence proximately caused or contributed to the collision and the resulting deaths.

Defendants removed the case to this court on August 17, 2020, pursuant to 28 U.S.C. § 1441(a) and 28 U.S.C. §1332(a)(2), asserting in their notice of removal that Penske has been improperly joined and that therefore, there is complete diversity.  Plaintiffs have moved to remand.

2

Removal and Diversity Jurisdiction Principles

A defendant or defendants may remove from state court to federal court an action over which the federal court has original jurisdiction.  28 U.S.C. § 1441(a).  Pursuant to 28 U.S.C. § 1332(a)(2), district courts have "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 ... and is between ... citizens of a State and citizens or subjects of a foreign state."  Diversity jurisdiction exists only when there is complete diversity, which requires that all persons on one side of the controversy are citizens of different states than all persons on the other side. Thompson v. Greyhound Lines, Inc., 574 F. App'x 407, 408 (5th Cir. 2014) (internal quotation marks and citation omitted). Where "there are aliens on both sides of the litigation, complete diversity is lacking, and there can be no diversity jurisdiction."  Vantage Drilling Co. v. Hsin-Chi Su, 741 F.3d 535, 537–38 (5th Cir. 2014).

For purposes of diversity jurisdiction, a corporation of a foreign State is deemed a citizen of "every State and foreign state" in which it is incorporated and the "State or foreign state" where it has its principal place of business.  Vantage Drilling Co., 741 F.3d at 537–38 (citing 28 U.S.C. § 1332(c)(1)).  The citizenship of a limited liability company is determined by the citizenship of all of its members for

3

diversity purposes, <u>Harvey v. Grey Wolf Drilling Co.</u>, 542 F.3d 1077, 1080 (5th Cir. 2008), and "a limited partnership is a citizen of each state in which its partners—both general and limited—hold citizenship," <u>Whalen v. Carter</u>, 954 F.2d 1087, 1095 (5th Cir. 1992) (citing <u>Carden v. Arkoma Assocs.</u>, 494 U.S. 185, 110 S. Ct. 1015, 108 L. Ed. 2d 157 (1990)).

Plaintiffs herein are citizens of Mexico and defendants OPA, WPA and McKinney are citizens of Alabama.[1]  Defendant Penske is a limited partnership with a general partner and three limited partners, including MBK USA Commercial Vehicles, Inc., a Delaware corporation whose principal place of business is in Tokyo, Japan.  Thus, if Penske's citizenship is considered, then there are aliens on both sides of the case and complete diversity is lacking.  However, defendants contend that Penske has been improperly joined as plaintiffs have not stated a viable claim against it, and that Penske's citizenship should therefore be disregarded in determining whether there is complete diversity.  <u>See</u> <u>Flagg v. Stryker Corp.</u>, 819 F.3d 132, 136 (5th Cir. 2016) (citations omitted) (explaining that "if the plaintiff improperly joins a non-diverse defendant, then the court may disregard the citizenship of that defendant, dismiss

---

[1]    Both OPA and WPA are limited liability companies whose members are citizens of Alabama, and McKinney is a resident citizen of Alabama.

4

the non-diverse defendant from the case, and exercise subject
matter jurisdiction over the remaining diverse defendant.").

<u>Plaintiffs' Objections to Removal</u>

In their motion to remand, plaintiffs barely acknowledge
defendants' argument that Penske has been improperly joined.
They do not concede the point but rather claim that this
argument is a "red herring" and has "no relevancy" at this time
as "[d]efendants are not residents of Mississippi and have been
legitimately part of this litigation."  And, as grounds for
their motion to remand, they argue that the case must be
remanded because (1) removal was premature, as defendants filed
their notice of removal prior to being served with process, or
because, if not premature, then (2) the notice of removal was
untimely under 28 U.S.C. § 1446(b) since it was filed more than
thirty days after defendants had notice of the plaintiffs'
complaint.  Neither contention has merit.

Timeliness of removal is governed by 28 U.S.C. § 1446,
which states:

> The notice of removal of a civil action or proceeding
> shall be filed within 30 days after the receipt by the
> defendant, through service or otherwise, of a copy of
> the initial pleading setting forth the claim for
> relief upon which such action or proceeding is based,
> or within 30 days after the service of summons upon
> the defendant if such initial pleading has then been
> filed in court and is not required to be served on the
> defendant, whichever period is shorter.

§ 1446(b)(1).  In this case, plaintiffs filed their complaint in the Kemper County Circuit Court on June 3, 2020.  When defendants subsequently filed their notice of removal on August 17, none of them had been served with process.  However, while a defendant may not remove an action before an initial pleading has been filed, which in Mississippi is a complaint, see Price v. Clark, 21 So. 3d 509, 521 (Miss. 2009)("Rule 3(a) of the Mississippi Rules of Civil Procedure states '[a] civil action is commenced by filing a complaint with the court.'"), the Fifth Circuit has held that once a complaint has been filed, a defendant is not required to await service of process before he may remove the action.  See Addison v. First Family Fin. Servs., Inc., No. CIV.A. 4:06CV22LR, 2006 WL 1307948, at *1 (S.D. Miss. May 10, 2006) (citing Delgado v. Shell Oil Co., 231 F.3d 165, 177 (5th Cir. 2000), cert. denied, 532 U.S. 972 (2001) (stating that "the Fifth Circuit does not require service of process as a prerequisite to removal", and explaining that "under Delgado, a notice of removal filed after the complaint, but before service of the complaint, is not premature but rather timely").

Furthermore, even if a defendant is aware that a complaint has been filed, the thirty-day period for removal under § 1446(b)(1) does not start to run until the defendant has been served with process.  In this regard, the Fifth Circuit has explained as follows:

> [The removal] statutes clearly provide that a
> defendant's right to removal runs from the date on
> which it is formally served with process. <u>Murphy
> Bros., Inc. v. Michetti Pipe Stringing, Inc.</u>, 526 U.S.
> 344, 347-48, 119 S. Ct. 1322, 143 L. Ed. 2d 448
> (1999). Put another way, "one becomes a party
> officially, and is required to take action in that
> capacity, only upon service of a summons or other
> authority-asserting measure stating the time within
> which the party served must appear and defend." <u>Id.</u>
> at 350, 119 S. Ct. 1322. A defendant has no
> obligation to appear in court or defend an action
> *before* it is formally served with process directing it
> to appear before that forum. <u>Id.</u> Only after a party
> is subject to the powers of a court, must it seek to
> effect removal.

<u>Thompson v. Deutsche Bank Nat. Tr. Co.</u>, 775 F.3d 298, 303 (5th

Cir. 2014) (defendant is not required to removal prior to formal

service, even if it is aware of pending litigation).[2]

---

[2] Plaintiffs' principal objection is that by removing the case
prior to service of process, without "authority, justification
or reasonable factual basis," defendants have "usurped"
plaintiffs' right to choose a venue for this litigation. They
state that when they filed this action, they knew that two other
lawsuits involving the subject collision had been filed in an
Alabama state court, and they were still considering whether to
pursue their claims in Mississippi or Alabama. That is why they
had made "**NO** efforts" to serve process. Plaintiffs assert that
Alabama could "easily be the more convenient venue" in view of
the pending litigation, which "can certainly be deemed
justification" for filing their claims in Alabama as well,
"versus protracted, piece mill litigation [sic]". And they
charge that defendants' removal to "Federal Court in
Mississippi" is "a blatant attempt…at forum shopping apparently
to utilize these cases in some sort of an attempt to effect or
delay the pre-filed litigation pending in Alabama." Plaintiffs
add that they are "still undecided" whether to pursue the claims
in Mississippi or in Alabama."
    While none of this has any bearing on the court's analysis
of the present motion, the court is nevertheless compelled to
point out that defendants have done nothing to prevent

Defendants' removal herein was therefore timely and plaintiffs' arguments to the contrary are rejected.

Improper Joinder

Improper joinder is a narrow exception to the requirement that removal be based solely on complete diversity, and defendants have a heavy burden to establish improper joinder. McDonal v. Abbott Labs., 408 F.3d 177, 183 (5th Cir. 2005). That means that defendants herein must demonstrate that plaintiffs have no possibility of recovery against Penske, "which stated differently means that there is no reasonable basis for [this] court to predict that [plaintiffs] might be able to recover against [Penske]." Id. (quoting Smallwood v. Ill. Cent. R.R. Co., 385 F.3d 568, 573 (5th Cir. 2004) (en banc)).[3] See also Ross v. Citifinancial, Inc., 344 F.3d 458, 461 (5th Cir. 2003) (making clear that "there must be a reasonable possibility of recovery, not merely a *theoretical* one").

---

plaintiffs from choosing between an Alabama and a Mississippi venue for their lawsuit. Plaintiffs could have filed a lawsuit in Alabama. *Plaintiffs chose to file a lawsuit in Mississippi.* Whether they intended to serve process and pursue litigation in Mississippi is of no moment for purposes of the present motion, since defendants, whether served with process or not, had a right under the law to file their notice of removal once they became aware of plaintiffs' Mississippi state court complaint.

[3] Another way a defendant may establish improper joinder is through proof of "actual fraud in the pleading of jurisdictional facts." Travis v. Irby, 326 F.3d 644, 647 (5th Cir. 2003). Defendants in this case make no such claim.

8

Improper joinder issues are ordinarily resolved by conducting a Rule 12(b)(6)-type analysis, though in cases where the plaintiff has stated a claim but "misstated or omitted discrete facts that would determine the propriety of joinder," the court has the discretion to pierce the pleadings and conduct a summary inquiry.  Flagg, 819 F.3d at 136 (citing Smallwood, 385 F.3d at 573).[4]  A plaintiff fails to state a claim for relief under Rule 12(b)(6) when the complaint does not contain "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  On this point, the Supreme Court explained in Twombly that to state a claim under Rule 12(b)(6), it is not enough to allege facts that are merely consistent with

---

[4]   In the typical improper joinder case, a resident plaintiff destroys complete diversity by suing a resident defendant along with nonresident defendants.  However, the improper joinder doctrine extends beyond that situation.  It applies regardless of whether the plaintiff is a resident (or citizen) of the forum state, see, e.g., Liljeberg v. Cont'l Tire The Americas, LLC, No. 2:11-CV-510-WKW, 2012 WL 602306, at *4 (M.D. Ala. Feb. 24, 2012) (defendant alleging improper joinder of Arkansas defendant by Arkansas plaintiff in case filed in Alabama); and it applies whether the allegedly improperly joined is a resident of a state other than the forum, see, e.g., Delta Bay Med., LLC v. Ervin & Assocs., LLC, No. 3:11-CV-156 HTW-LRA, 2014 WL 11444149, at *3 (S.D. Miss. Sept. 28, 2014) (Mississippi and Alabama plaintiffs alleged to have improperly joined Alabama defendant), including a foreign state, see, e.g., Nolan v. Boeing Co., 736 F. Supp. 120 (E.D. La. 1990) (defendant corporation alleging fraudulent joinder of alien corporation by alien plaintiff for purposes of defeating diversity jurisdiction).

a finding that the defendant violated the law; rather the
complaint must allege enough facts to move beyond mere
possibility to plausibility of plaintiff's entitlement to relief
against the defendant.  Id. at 557.  In other words, the
complaint's "[f]actual allegations must be enough to raise a
right to relief above the speculative level, on the assumption
that all the allegations in the complaint are true (even if
doubtful in fact)."  Id. at 555.  A complaint is inadequately
pled "if it tenders 'naked assertion[s]' devoid of 'further
factual enhancement,'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129
S. Ct. 1937, 1949. 173 L. Ed. 2d 868 (2009) (quoting Twombly,
550 U.S. at 557), and does not provide factual allegations
sufficient to give the defendant fair notice of what the claim
is and the grounds upon which it rests, id. (citing Twombly, 550
U.S. at 555).  "To raise a right to relief, the complaint must
contain either direct allegations or permit properly drawn
inferences to support 'every material point necessary to sustain
a recovery'; thus, '[d]ismissal is proper if the complaint lacks
an allegation regarding a required element necessary to obtain
relief.'"  Torch Liquidating Tr. ex rel. Bridge Assocs. L.L.C.
v. Stockstill, 561 F.3d 377, 384 (5th Cir. 2009) (quoting
Campbell v. City of San Antonio, 43 F.3d 973, 975 (5th Cir.
1995)).  "Ordinarily, if a plaintiff can survive a Rule 12(b)(6)
challenge, there is no improper joinder."  Smallwood, 385 F.3d

10

at 573.  "As a practical matter, the negative corollary of this statement will often hold true:  if a plaintiff's claims against [a nondiverse defendant] cannot survive a Rule 12(b)(6) analysis, the finding of improper joinder follows." <u>Druker v. Fortis Health</u>, Civil Action No. 5:06-cv-00052, 2007 WL 38322, *7 (S.D. Tex. Jan. 4, 2007).

<u>Penske's Alleged Negligence</u>

Defendants point out in their notice of removal and their response to plaintiffs' motion to remand that under 49 U.S.C. § 30106, known as the Graves Amendment, Penske, the nondiverse defendant, cannot be held vicariously liable for any negligence on the part of OPA, WPA or McKinney but rather can only be held liable for its own negligence.  <u>See</u> <u>Cates v. Hertz Corp</u>., 347 F. App'x 2, 6 (5th Cir. 2009) (explaining that "[T]he Graves Amendment preempt[s] state law in the area of vicarious liability for owners engaged in the business of renting or leasing motor vehicles, absent a showing of negligence or criminal wrongdoing on the part of the owner.") (citing 49 U.S.C. § 30106).  Plaintiffs do not dispute this.  The issue, therefore, is whether plaintiffs have stated a viable claim against Penske for its own negligence.

As to Penske, plaintiffs' complaint states the following:

Penske is in the specialized business of providing
custom vehicles or box trucks to commercial transport
companies, such as Overnight Parts Alliance and

11

> Wholesale Parts Alliance Defendants.  Penske
> customizes these trucks specifically to accommodate
> the needs of said Defendants.  In this case, Penske
> provided a 2020 box truck manufactured by
> International.  Penske knew that the business
> enterprise with the joint venture with Overnight Parts
> Alliance, LLC, provided that Overnight would be
> utilizing these trucks to drive long distances in
> potentially dangerous conditions with specifically
> being foreseeable to have drivers that may be fatigued
> or impaired.  Investigation revealed that the driver,
> Steven McKinney, was extremely fatigued and impaired
> before and at the time of the collision.  Based on the
> lack of alarms, controls, or safety devices that were
> not properly utilized or operating on the truck owned,
> customized, and provided by Penske, the driver was
> inadequately alarmed and was otherwise allowed to
> continue his impaired driving in a reckless and
> grossly negligent manner and as such the independent
> negligent actions of Penske in providing this vehicle
> contributed to the accident and gross negligence of
> McKinney and [WPA] and [OPA] contributing to the death
> of Jose Proceso Maldonado Barrera.

Defendants maintain, and the court agrees, that these

allegations are insufficient to state a claim against Penske.

To prevail on a claim of negligence, plaintiffs "must

establish by a preponderance of the evidence each of the

elements of negligence: duty, breach, causation and injury."

Sanderson Farms, Inc. v. McCullough, 212 So. 3d 69, 76 (Miss.

2017).  To be potentially liable, therefore, Penske must have

owed plaintiffs' decedent a duty of care.  There is no basis in

plaintiffs' allegations for concluding that Penske owed or

breached any duty.  See Demoney v. Gateway Rescue Mission, No.

2019-CA-00525-COA, 2020 WL 2036608, at *3 (Miss. Ct. App. Apr.

28, 2020), reh'g denied (Aug. 25, 2020) ("In a claim of

12

negligence, a plaintiff must establish a duty owed to it by a
defendant.  Whether a duty is owed is a question of law.")
(internal quotations and citations omitted).

As to the source of an alleged duty, plaintiffs allege only
that because Penske knew the subject leased vehicle would be
used by OPA/WPA for long-distance driving, then it was
reasonably foreseeable to Penske that OPA/WPA drivers might be
(or become) fatigued or impaired.[5]  Plainly, mere knowledge by
Penske, as the vehicle lessor, that the leased vehicle would
likely be driven long distances did not give rise to a duty by
Penske to equip the vehicle with unspecified "alarms, controls,
or safety devices" designed to protect against fatigued or

---

[5]    Plaintiffs' loose reference in the complaint to a "business
enterprise" and/or "joint venture" between Penske and OPA/WPA
may be intended to insinuate that Penske was involved in (or
responsible for) the selection of features (including safety
features) that were to be included on the vehicle.  However,
plaintiffs' conclusory references are unsupported by any factual
allegations to demonstrate the existence of a joint venture.
See Hults v. Tillman, 480 So. 2d 1134, 1146 (Miss. 1985) ("What
is essential to any intent to form a joint venture is the idea
that the parties are engaging in the undertaking with both
parties owning the venture, with a right of mutual control, and
joint obligations and liabilities."); see also Servicios
Especiales Al Comercio Exterior, s.c. v. Johnson Controls, Inc.,
No. 08-CV-1117, 2010 WL 323177, at *2 (E.D. Wis. Jan. 20, 2010)
(allegation that defendant was joint venturer "epitomizes a
naked assertion because it simply states the legal conclusion
that joint venture exists without any supporting factual
allegations").

impaired driving.[6]  <u>Cf.</u> <u>Noveck v. Avis Rent A Car Sys., LLC</u>, 446 F. App'x 370, 373 (2d Cir. 2011) (stating that "[w]e are aware of no authority, in New York or elsewhere, holding that a rental car agency has a specific duty to equip its vehicles with optional safety features…" and declining to find any such duty).

<u>Conclusion</u>

Based on the foregoing, it is ordered that plaintiffs' motion to remand is denied.  It is further ordered that plaintiffs' complaint against Penske is dismissed.[7]

SO ORDERED this 8th day of October, 2020.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE

---

[6]   Plaintiffs have not identified what "alarms, controls or safety devices" they believe should have been provided, and in fact, they do not actually allege that appropriate safety devices were not provided.  Rather, they allege that some unspecified safety feature either was not provided, *or* was not properly utilized by the driver *or* was not properly functioning at the time of the accident.

[7]   Defendants argue in their response to the motion to remand that WPA "is improperly joined and should be dismissed" because, as attested in an affidavit submitted by Marvin S. Windham, managing member of both OPA and WPA, WPA was not a party to the lease or rental agreements between OPA and Penske.  There is no motion before the court seeking dismissal of WPA.  What is before the court is plaintiffs' motion to remand.  And while defendants maintain that there is diversity jurisdiction because Penske was improperly joined, the improper joinder doctrine has no relevance to plaintiffs' claim against WPA.  "Improper joinder" refers to the joinder of a nondiverse defendant; WPA is not a nondiverse defendant.  In any event, the complaint clearly states a claim against WPA.  More particularly, it alleges that McKinney was employed by both OPA and WPA, and that both are vicariously liable for his alleged negligence.  If WPA contends otherwise, it is free to move for summary judgment.  In the meantime, it will remain a party defendant.